BIANCO, J.T.C.
In these consolidated matters filed pursuant to N.J.S.A 54:51A-4(c) [1] plaintiffs Township of Jefferson, Township of Mendham, Borough of Mendham, and Township of Mount Olive (collectively “the Municipalities”), challenge the Table of Equalized Valuations (“the Equalization Table”) promulgated by defendant, Director, Division of Taxation (“the Director”) for tax year 2010, to be utilized by the Commissioner of Education (“the Commissioner”) for the apportionment of school aid. [2] The Municipalities further *5 challenge the apportionment of county government taxes by defendant, Morris County Board of Taxation (“the Board”). Defendants oppose all allegations. This Opinion shall constitute the court’s decision concerning the same.
These matters present no factual dispute. Effective for tax year 2010, the Municipalities underwent either a revaluation or reassessment.[3] The Director promulgated the Equalization Table on or about October 1, 2010 in compliance with N.J.S.A. 54:1-35.1.[4] The Municipalities now challenge the Director’s methodology in promulgating the Equalization Table as it relates to each of them. They do not, however, challenge all the procedures utilized by the Director in making that determination; procedures that have been in use since 1970 (“Procedures”).[5]
*6 The narrow issue before the court concerns the Director’s application of the averaging step (i.e. Step 3) of those Procedures. For each of the Municipalities, the result of the averaging step yielded an average true value that was greater than the equalized true value (as determined pursuant to Step 1 of the Procedures). When this occurs, the Municipalities argue, the Director is obligated to use the equalized true value (determined from Step 1) and not the average true value (yielded from Step 3), to calculate the average ratio, which is the final step of the Procedures (i.e. Step 4).
According to the Municipalities, using the average true value when it exceeds equalized true value causes the Director’s calculation of the average ratio for each of the Municipalities to be lower, and ultimately, the Commissioner’s calculation of school aid to be less. Furthermore, the Municipalities assert that the Director’s use of average true value in excess of equalized true value will cause the values of real property to be over-stated, and therefore, the Municipalities’ share of the Morris County tax burden will be greater. Such results, the Municipalities argue, are unjust and contrary to both the Uniformity Clause of New Jersey’s Constitution and statutory law.
For the reasons set forth below, the court finds that the Director’s promulgation of the Equalization Table for the 2010 tax year offended neither the Constitution nor statutory law and is hereby affirmed. Furthermore, the court finds that the Municipalities failed to demonstrate (1) that the Director’s methodology could not be reasonably justified, and (2) that their share of distributable school aid would increase significantly. The court further finds that the allegations against the Board are not ripe for adjudication and are hereby dismissed. Lastly, as no allegations are specifically made against defendant, Department of the Treasury, that defendant is hereby dismissed.

*7
Presumption and Standard of Proof

N.J.S.A. 54:51A-4(e) provides that the Equalization Table is entitled to a presumption of correctness. The burden is on the taxing district to demonstrate that the Director’s methodology “could not reasonably be justified”. N.J.S.A. 54:51A-4; See Kingsley v. City of Bayonne, 89 N.J.Super. 549, 555, 215 A.2d 769 (App.Div.1965), certif. denied, 47 N.J. 86, 219 A.2d 421 (1966). The Director’s task in promulgating the Equalization Table is “one of great administrative complexity, involving, each year, literally scores of thousands of subordinate determinations”. City of Bayonne v. Division of Tax Appeals, 49 N.J.Super. 230, 239, 139 A.2d 424 (App.Div.1958).
New Jersey’s courts have recognized the “breadth of the discretion reposed in the Director in formulating details of methodology”. Kearny Town v. Director, Division of Taxation, 11 N.J.Tax 232, 237 (Tax 1990), aff'd, 13 N.J.Tax 119 (App.Div.1992); See Cherry Hill Township v. Director, Division of Taxation, 119 N.J.Super. 256, 258, 291 A.2d 28 (App.Div.1972); Fort Lee Borough v. Director, Division of Taxation, 12 N.J.Tax 299, 301 (Tax 1992), aff'd, 13 N.J.Tax 323 (App.Div.1993) (“the Director is given great latitude in the data gathering and calculations which underlie the construction of the school aid table”).
A taxing district cannot successfully challenge the Equalization Table “merely because a different method in any part of the complex process could be equally reasonably defended”. Bayonne, supra, 49 N.J.Super. at 239, 139 A.2d 424; Washington Township v. Warren Cty. Tax Adm’r., 19 N.J.Tax 1, 5 (Tax 2000) (the “Supreme Court characterized the equalization process as one which necessarily involves some lack of precision”).
Moreover, in prior school aid challenges, the taxing district had to additionally demonstrate that if it prevailed, “its share of distributable school aid will increase significantly”. 43 New Jersey Practice, State and Local Taxation, 14.4, at 322 (David E. Crabtree) (1st ed. 2007); See Fort, Lee, supra, 12 N.J.Tax at 311 (“if a successful challenge to the school aid table will result in only minor or insignificant changes in school aid, then the Director’s *8 actions will not be upset”); Bayonne, supra, 49 N.J.Super. at 237-40, 139 A.2d 424; Kearny, supra, 11 N.J.Tax at 240.[6]

Arguments

The Municipalities contend that in promulgating the Equalization Table, the Director’s calculation of each municipality’s average ratio using average true value in excess of equalized true value[7] for the 2010 tax year’ violated statutory law and the New Jersey Constitution. The Municipalities point to N.J.S.A. 54:4-2.25, -2.26, N.J.S.A. 54:1-35.1 to -35.6, and the Constitution’s Uniformity Clause as support for the proposition that real property, even for purposes of equalization, can never be valued above 100% of market value[8]. The Municipalities point to the current declining market[9] to illustrate that using average true value when it exceeds equalized true value will result in inflated real property values.[10] In such circumstances, the Municipalities maintain, the *9 Director should only use the average true value when that amount is less than the equalized true value.
As a direct consequence of the Director’s action, the Municipalities maintain they may suffer a reduction in school aid apportionment and will bear an unfair portion of county government costs.
In opposition, the Director argues that N.J.S.A. 54:4-2.25 and - 2.26 are inapplicable to equalization matters and inappropriate to challenges of the Director’s Equalization Table. Further, the Director asserts that equalized true value, for the purposes of the Equalization Table, does not mean 100% of market value. Rather, it is defined in N.J.S.A. 54:1-35.3 as a value “determined in such manner as the [Director may, in his discretion, select”.
The Director also maintains that the court in Township of Bloomfield v. Essex Cty. Tax Adm’r. previously decided the issue of whether averaging may be used in a declining market. Bloomfield, 12 N.J.Tax 543, 547 (Tax 1992). According to the Director, Bloomfield stands for the proposition that averaging is appropriate whatever real estate market conditions may be. Id. at 551. Additionally, Bloomfield demonstrates that applying averaging to one taxing district but not all, results in disparate and non-uniform treatment. See Id. at 550.
At trial, the Municipalities offered the testimony of Shawn G. Hopkins (“Mr. Hopkins”), Assessor for the Township of Jefferson, as to the Director’s calculation of average ratios and the statutory requirements underpinning the Equalization Table. Mr. Hopkins was qualified as an expert witness, and prepared a report for each of the Municipalities that were accepted in evidence without objection.
The Director’s only witness was Thomas J. Reilly (“Mr. Reilly”), a fact witness who is currently employed as the Bureau Chief of Valuation and Mapping for the Division of Taxation. Mr. Reilly testified from personal knowledge about the equalization process.
*10 Both witnesses testified as to the potential impact that altering the average ratios may have on the apportionment of Moras County governmental costs[11]; however, no calculations or data were presented regarding any potential impact on the Municipalities’ school aid distributions.

The Equalization Process

N.J.S.A. 54:1-35.1 requires that, “[o]n or before October 1 in each year the Director of the Division of Taxation ... shall promulgate a table of equalized valuations to be used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954”.[12] See also City of Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. 371, 383, 113 A.2d 753 (1955) (finding that “[t]he Director is required by ... N.J.S.A. 54:1-35.1 et seq., to promulgate his table of equalized valuations ... to be used ... in computing the amount each municipality shall receive in the way of school aid funds for the succeeding school year.”); Bayonne, supra, 49 N.J.Super. at 232, 139 A.2d 424.
Justice Brennan observed that some form of “equalization ... has been a feature of our tax laws ... [since] June 10, 1799.” City of Passaic, supra, 18 N.J. at 382, 113 A.2d 753 (citations omitted). “Equalization is the process of insuring that each property in every taxing district carries its fair, legal share of the burden of taxation”. Division of Taxation, Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessors, X-l (1989). Our Supreme Court has held that:
[t]he need for an equalization table and for a determination of the ratio of assessment to true value for school aid and county tax distribution stems from the failure of local assessors to assess property in their municipalities at true value or at a uniform percentage thereof uniformly applied by all municipalities.
[Town of Kearny v. Division of Tax Appeals, 35 N.J. 299, 303, 173 A.2d 8 (1961)].
*11 See also Township of Willingboro v. Burlington Cty. Bd. of Taxation, 62 N.J. 203, 208-09, 300 A.2d 129 (1973).
The Equalization Table calculates the average ratio of assessed value[13] to true value[14] of real property in every taxing district in New Jersey. Traditionally, the higher the average ratio the greater the amount of school aid received.[15] Bayonne, supra, 49 N.J.Super. at 232, 139 A.2d 424.
In determining the Municipalities’ average ratios, the Director utilized a standardized sales study formula as provided for under the aforementioned long-standing Procedures. The information for the sales study was derived from a sampling period running from the July 1 to June 30 (inclusive) immediately preceding the October 1st deadline for the promulgation of the Equalization Table. N.J.A.C. 18:12-1.1(5).
The Director’s sampling period in the present matters spanned July 1, 2009 through June 30, 2010 (inclusive). However, since the Municipalities implemented either a revaluation or a reassessment for 2010, the Director excluded all sales between July 1, 2009 and December 31, 2009 (inclusive) from the sampling period as required by N.J.A.C. 18:12-1.1(27).
The Procedures utilized by the Director in promulgating the Equalization Table consist of four steps (original Note 14 deleted). *12 In Step One, the Director compiled all useable sales[16] of real property within each Morris County municipality during the sampling period. The Director separated the useable sales by property type[17] and calculated the aggregate assessments and aggregate sales imees for each municipality[18]. Then, the Director calculated each municipality’s weighted ratio[19]. Finally, the Director applied the weighted ratio to each municipality’s aggregate assessments to calculate its equalized true value[20] for 2010. Next, in Step Two, the Director adjusted each municipality’s equalized true value for tax year 2009 by its added and omitted assessments[21].
In Step Three (averaging step), the Director added the equalized true value for 2010 to the equalized true value for 2009 and *13 divided the total by two. Willingboro, supra, 62 N.J. at 212, 300 A.2d 129. The resulting amount was the average true value[22]. For any year, the average true value “is the product of a continuous, overlapping, compounding averaging”[23]. Bloomfield, supra, 12 N.J.Tax at 547. Finally, in Step Four, the Director calculated each municipality’s average ratio[24] by dividing the aggregates assessments by the average true value. Id.; See 43 New Jersey Practice, supra, at 312.
Step Three of the Procedures (i.e. the averaging step) is the Municipalities’ sole point of contention. The Director employs averaging to “avoid abrupt changes” and “slow the rate of change” in the average ratio of taxing districts from year to year, thereby providing stability and predictability. Bloomfield, supra, 12 N.J.Tax at 548; Gaynes v. Township of Edison, 179 N.J.Super. 373, 387, 2 N.J.Tax 500, 432 A.2d 127 (App.Div.1980), certif. denied, 85 N.J. 501, 427 A.2d 588 (1981); City of Newark v. Essex Cty. Bd. of Taxation, 124 N.J.Super. 76, 81, 304 A.2d 761 (App. Div.), certif. denied, 63 N.J. 566, 310 A.2d 480 (1973). Averaging is also used to counterbalance the impact of potentially unrepresentative sampling periods. Gaynes, supra, 179 N.J.Super. at 387, 2 N.J.Tax 500, 432 A.2d 127 (“avoid an undue influence of a dearth of sales in any single year”). New Jersey courts have reviewed and approved the use of averaging on numerous occasions. See Fort Lee, supra, 12 N.J.Tax at 303; City of Atlantic City v. Atlantic Cty. Bd. of Taxation, 2 N.J. Tax 30, 41 (Tax 1980), aff'd, 4 N.J.Tax 685 (App.Div.1982), certif. denied, 93 N.J. 250, 460 A.2d 659 (1983); Washington, supra, 19 N.J.Tax at 3; Bloomfield, supra, 12 N.J.Tax at 549.

*14
Statutory Law

The court rejects the Municipalities contention that N.J.S.A. 54:4-2.25 and -2.26 prohibit the Director from calculating his average ratios by using an average true value that exceeds the equalized true value.
N.J.S.A. 54:4-2.25 provides in part that:
real property subject to assessment and taxation for local use shall be assessed according to the same standard of value, which shall be the true value of such real property and the assessment shall be expressed in terms of the taxable value of such property ... [which] shall be established by each county board of taxation ...

[Id.].

In addition, N.J.S.A 54:4-2.26 requires that the “level of taxable value of real property established by a county board of taxation shall be expressed as a multiple of 10%, and no level so established shall be lower than 20% or higher than 100% of the standard of value”.
The language of N.J.S.A. 54:4-2.25 and -2.26 specifically identifies these provisions as applying to the “county board[s] of taxation”. Neither the Director nor the Equalization Table is mentioned in either statute. See Id. The Municipalities cite no case law applying N.J.S.A 54:4-2.25 and -2.26 to the promulgation of the Equalization Table. The court likewise was unable to find any supportive case law.
The Director’s promulgation of the Equalization Table is “a legislative or quasi-legislative function”. Bayonne, supra, 49 N.J.Super. at 240, 139 A.2d 424; Passaic, supra, 18 N.J. at 384, 113 A.2d 753. To constrain the Director, in that function, by the same rules that bind the County Boards of Taxation is contrary to the broad “discretion reposed in the Director”. Kearny, supra, 11 N.J.Tax at 237.
It is the function of the court to construe statutes and laws in a “consistent, harmonious” manner. Abe Schrader Corp. v. Town of Secaucus, 8 N.J.Tax 390, 402 (Tax 1986); See State v. A.N.J., 98 N.J. 421, 424, 487 A.2d 324 (1985) (“interpretation that will make the most consistent whole”). Even under the most liberal con *15 struction, the court finds that N.J.S.A. 54:4-2.25 and -2.26 do not apply to the Director’s promulgation of the Equalization Table.
Furthermore, while at times employing their own terminology as noted throughout this opinion, the Municipalities essentially attempt to persuade the court that equalized true value is statutorily defined in N.J.S.A. 54:1-35.1 to -35.6 as 100% of market value.[25] The court is not persuaded.
It is well established that equalized true value is not “actually or accurately representative of] true market value”[26]. Kearny v. Division, supra, 35 N.J. at 304, 173 A.2d 8; See 1530 Owners Corp. v. Borough of Fort Lee, 135 N.J. 394, 398, 640 A.2d 811 (1994); Borough of Carteret v. Division of Tax Appeals, 40 N.J.Super. 439, 448, 123 A.2d 559 (App.Div.), certif. denied, 22 N.J. 224, 125 A.2d 235 (1956). Rather, the Director’s Equalization Table is “a practical approximation”. Kearny, supra, 35 N.J. at 310, 173 A.2d 8; See Willingboro, supra, 62 N.J. at 209, 300 A.2d 129 (the Director “developed a useful system of determining fairly reliable municipal ratios”).
The Appellate Division in Bayonne determined that the average ratio of assessed value to true value “can never be known with certainty”. Bayonne, supra, 49 N.J.Super. at 239, 139 A.2d 424. Accordingly, the “ultimate objective” of the Equalization Table is to promulgate “fairly accurate approximations”. Bayonne, supra, 49 N.J.Super. at 239, 139 A.2d 424. Unlike individual real property appeals where the true value for a specific property can be determined through examination, analysis, appraisal and comparison to like-sales, a taxing district’s equalized true value is merely “hypothetically the true [ ] value”. Kingsley *16 v. Division of Tax Appeals, 40 N.J. 338, 341, 192 A.2d 561 (1963); See Atlantic City, 2 N.J.Tax at 41.
N.J.S.A. 54:1-35.1 to -35.6 specifically provides that for purposes of equalization, true value shall be “determined in such manner as the [Director may, in his discretion, select”. N.J.S.A. 54:1-35.3. Moreover, the Procedures (original Note 26 deleted), define “true value” as that amount calculated in Step One. Subsequent case law has termed this amount: equalized true value. See Willingboro, supra, 62 N.J. at 210, 300 A.2d 129.
Accordingly, the court finds that the Municipalities’ assertion that equalized true value is equivalent to market value is without merit and contrary to established New Jersey ease law as well as the language of N.J.S.A 54:1-35.1 to -35.6.

Uniformity Clause

The Uniformity Clause of the New Jersey Constitution requires, in part, that real property:
shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value ... [N.J. Const. art. VIII, § 1, ¶ 1, (emphasis added) ].
The Municipalities argue that the term “standard of value” as used in the Uniformity Clause, means “market value” for purposes of equalization. Therefore, the Municipalities maintain that the Director violated the Uniformity Clause when he calculated the average ratios, using an average true value that exceeded equalized true value.
“Equality of treatment in sharing the duty to pay” taxes is a principle of New Jersey Constitutional law. Murnick v. City of Asbury Park, 95 N.J. 452, 458, 471 A.2d 1196 (1984). Accordingly, all taxing districts must be treated “uniformly, applying substantially similar data and a common standard”. Bloomfield, supra, 12 N.J.Tax at 550 (in context of county equalization tables); See also 43 New Jersey Practice, supra, at 79 (“taxpayers must be treated in a manner comparable to other similarly situated taxpayers”); Chadwick 99 Assoc. v. Director, Division of Taxation, 23 N.J.Tax 390, 412 (Tax 2007).
*17 The court is satisfied that the Municipalities’ argument was previously considered and rejected in the case of Bloomfield Township v. Essex County Tax Adm’r. Bloomfield, supra, 12 N.J.Tax at 551. The court in Bloomfield considered whether averaging is appropriate in a declining market and whether applying averaging to some taxing districts but not others violates the rule that taxing districts must be uniformly treated. See Id. at 550. The Bloomfield court found that applying averaging to all municipalities except those experiencing a market decline would constitute unequal and disparate treatment. See Id.
The Municipalities argue that Bloomfield is distinguishable because the underlying matter in Bloomfield was a challenge to a county’s equalization table (and not the Director’s) in the allocation of only county government costs (and not school aid allocation). See Id. at 545. Additionally, the Municipalities argue that unlike here, the court in Bloomfield analyzed the “page 8”[27] formula.[28] This court concludes that the factual distinctions between Bloomfield and the present matters are de minimis for purposes of an equalization analysis, and are therefore of no consequence.
In Bloomfield, the taxing district objected to the county’s equalization table. Id. In preparing its equalization table, the county adopted the Director’s calculations. Id. at 546. The taxing district argued that the county erred in utilizing the average true value calculated by the Director in its “page 8” *18 formula because, sales during the computation year “reflect[ed] a decline in values”. Id. at 549.
The taxing district in Bloomfield argued that it would be inappropriate to use the average true value because the prior year’s “sampling period occurred in a rising market”. Id. Furthermore, the taxing district claimed that the “introduction of stale data (i.e. sales occurring in several prior periods)” would be unfair if applied in a declining market because the average true value still reflected the prior year’s market increases. Id. As an alternative to “page 8”, the taxing district sought to calculate the computation year’s equalized true value without averaging. Id. at 550.
The court rejected this argument finding that not averaging would “coneentrate[ ] the effect of declining market values in one year [for the taxing district], while the averaging method” would spread “the decline over two or more years” for similarly situated municipalities. Id. at 550. Moreover, the court found that utilizing a one-year ratio for one taxing district while applying averaging for the other municipalities, was “in derogation of the principle that ... all municipalities [must be] uniformly” treated utilizing “a common standard”. Id. at 550; See Willingboro, supra, 62 N.J. at 219, 300 A.2d 129.
Here, similar to the taxing district in Bloomfield, the Municipalities challenge the use of averaging when a taxing district experiences a declining market, thereby resulting in an average true value in excess of equalized true value. In fact, the Municipalities’ also suggest using a one-year sales study in lieu of the customary two-year study[29] set forth in the Procedures.
Accepting the Municipalities’ argument would mean that taxing districts with current year equalized true values lower than those of the previous year, would be subject to averaging while taxing districts with increased equalized true values would not. This is *19 specifically the outcome contemplated and disapproved by the court in Bloomfield. See Bloomfield, supra, 12 N.J.Tax at 550.
This court is satisfied that, even in a declining real estate market, averaging provides more accurate calculations of assessed to trae value by avoiding errors that could result from bad sampling periods. Gaynes, supra, 179 N.J.Super. at 387, 2 N.J.Tax 500, 432 A.2d 127; See Kearny, supra, 35 N.J. at 304, 173 A.2d 8 (equalized values are approximations); Bloomfield, supra, 12 N.J.Tax at 550; Murnick, supra, 95 N.J. at 458-59, 471 A.2d 1196 (noting that in valuation not every deviation from exact and actual true value “is of constitutional dimension”).
The court finds that the Director’s promulgation of the Equalization Table did not violate the Uniformity Clause. To the contrary, the Director’s calculations were “uniform! ], applying substantially similar data and a common standard” consistently to all taxing districts in New Jersey, See Id.; N.J. Const. art. VIII, § 1, 111; See also Siegal v. City of Newark, 38 N.J. 57, 62, 183 A.2d 21 (1962) (if “taxpayer pays no more than [its] fair share for the year ... practical justice is achieved”).

CONCLUSION

For the reasons hereinabove expressed, the Equalization Table of tax year 2010 is affirmed. The Municipalities failed to demonstrate (1) that the Director’s methodology in promulgating the Equalization Table could not be reasonably justified, and (2) that their amount of school aid would increase significantly if they were to prevail. 43 New Jersey Practice, supra, at 322; Fort Lee, supra, 12 N.J.Tax at 311; N.J.S.A. 54:51A-4.
Furthermore, while it is common for County Boards of Taxation to adopt the Director’s Equalization Table in apportioning government county costs, there is no requirement to do so. See Willingboro, supra, 62 N.J. 203, 209, 300 A.2d 129 (1973). Conceivably, the Board may choose not to adopt the Director’s Equalization Table, when it calculates government cost allocation later this year.[30] Accordingly, the Municipalities’ allegations against the Board are hereby dismissed as premature.[31]
*20 Finally, as no specific allegations have been made by the Municipalities against defendant, Department of the Treasury, said defendant is hereby dismissed.
The Tax Court Clerk/Administrator shall issue judgments consistent with this opinion.

 In the interest of time, and for purposes of trial and this opinion, the court consolidated these matters, without objection, since "[s]uch hearings, review and revisions shall be completed by January 30 next following the promulgation of the table.” N.J.S.A. 54:51A-4(c). It was agreed that Mr. Cohen would act as lead counsel for all the plaintiffs, and that Mr. Gorelli would act as lead counsel for all defendants.

 Although the language of N.J.S.A. 54:1-35.1 provides that the Director's Equalization Table shall "be used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954”, the pertinent statute for calculating school aid is now the School Funding Reform Act of 2008 ("SFRA”). Nevertheless, the Director’s obligation to promulgate a Table of Equalized Valuations pursuant to N.J.S.A. 54:1-35.1 has not been affected by the repeal of the State School Aid Act of 1954. See notes following N.J.S.A. 54:1- *5 35.1. See also Abbott ex rel. Abbott v. Burke: In January of 2008, the Governor signed the School Funding Reform Act of 2008 ("SFRA”) into law. Abbott, 199 N.J. 140, 147, 971 A.2d 989 (2009). "At the core of the [SFRA] formula is the Adequacy Budget”. Id. at 153, 971 A.2d 989. However, "[i]n addition to the Adequacy Budget, SFRA’s formula includes Equalization Aid, Categorical Aid, Adjustment Aid, and Education Adequacy Aid ... Equalization Aid is State-provided aid to support the Adequacy Budget by funding the difference between a district's Local Fair Share ("LFS”) and its Adequacy Budget”. Id. at 155, 971 A.2d 989. Each district's LFS is "determined by adding a district’s equalized property wealth and its equalized income wealth". Id.; See NJ.S.A. 18A:7F-52 (utilizing each district’s "equalized valuation”); See also NJ.S.A. 18A:7F-45 (" ‘equalized valuation’ means the equalized valuation of the taxing district ... as certified by the Director ... on October 1 ... ”).

 Revaluation is the term used when an outside agency conducts a mass appraisal of real property within a taxing district. Willingboro v. Burlington Cty. Bd. of Taxation, 62 N.J. 203, 214, n. 8, 300 A.2d 129 (1973). Reassessment is the term used when such action is undertaken by the taxing district’s assessor. Id.; See also Division ok Taxation, Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessors, VIII-1 to -3 (1989).

 The average ratio of assessed to true value for the Township of Jefferson was 94.34%; 90.75% for the Township of Mendham; 91.76% for the Borough of Mendham; and 85.94% for the Township of Mount Olive.

 "Transmitted herewith is an outline of the procedures which will be followed by the Director of the Division of Taxation in the preparation of the 1970 Table of Equalized Valuations for use by the Commissioner of Education in the calculation and distribution of State School Aid (P.L.1954 c. 86).” Memorandum from the Department of the Treasury, Division of Taxation, Local Property *6 Tax Bureau, to The Secretary of Each County Board of Taxation, All Municipal Assessors, and All Municipal Clerks (July 30, 1970).

 Although the cases cited are pre-SFRA, the underlying rationale as stated in Fort Lee, is that only "minor or insignificant changes in school aid ... implicitly [demonstrates] that the Director's actions in adopting the table were ‘reasonably justified’ within the meaning of N.J.S.A. 54:51A-4(c)”. Fort Lee, supra, 12 N.J.Tax at 311-12. The court finds this standard compatible with the "discretion reposed in the Director”. Kearny, supra, 11 N.J.Tax at 237. Additionally, neither the Municipalities nor the Director challenged this standard. Nevertheless, the court leaves open the issue of whether the changes in state aid calculation may impact this standard in the future.

 The Municipalities use the term current true value in place of equalized true value. They define current true value as the amount calculated when the "aggregate assessed value for all property classes within the taxing district is divided by the [weighted ratio, determined] from Step One”. Case law has defined equalized true value as the product of "the weighted ... ratio [ ] applied to the aggregate assessments”. Bloomfield v. Essex Cty. Tax Adm'r., 12 N.J.Tax 543, 547 (Tax 1992). For purposes of this opinion, and in accordance with prior case law, the court utilizes the term equalized true value.

 The Municipalities contend that the terms "true value" and "standard of value” are synonymous with "market value”.

 All parties generally agree that New Jersey has been in a declining real estate market but did not specify the duration of the decline.

 Township of Jefferson argues that its real property values were overstated by $180,718,901. The Township of Mendham asserts an overstatement of value of *9 $142,461,069. The Borough of Mendham alleges a real property value overstatement of $94,452,881. The Township of Mount Olive argues that its real property values were overstated by $302,839,180.

 Mr. Hopkins opined that the Township of Jefferson will bear $425,500 in additional costs; $415,000 for the Township of Mendham; $268,068 for the Borough of Mendham; and $797,900 for the Township of Mount Olive. While Mr. Reilly was not offered as an expert witness, the court found that the subject matter of his testimony was within his personal knowledge.

 See footnote 2.

 Assessment is the "official estimate of the values which are to constitute the basis of an apportionment of tax". Gualano v. Board of School Estimate, 72 N.J. Super. 7, 21, 177 A.2d 580 (Law Div. 1962); See Village of Ridgefield Park v. Bergen Cty. Bd. of Taxation, 61 N.J.Super. 170, 160 A.2d 316 (Law Div.1960).

 See N.J.S.A. 54:1-35.3.

 The court leaves open the question of whether this generalized comment remains true because neither the Municipalities nor the Director provided the court with information sufficient to determine whether the adoption of SFRA has altered this statement. While the Director promulgates the Equalization Table the “Commissioner of Education is responsible for calculating the amount of State school aid to be received by each school district”. Division of Taxation, Handbook for New Jersey Assessors, supra, at X-27; See also Kearny, supra, 11 N.J.Tax at 235; See Bayonne, supra, 49 N.J.Super. at 232, 139 A.2d 424 (“school aid is apportionable upon [the] statutory formula”); N.J.S.A. 54:1-35.1.

 N.J.A.C. 18:12-1.1 specifies 33 categories of sales that the Director generally should not consider in promulgating the Equalization Table or calculating average ratios. Such sales are deemed non-useable.

 The useable sales were separated into four property classes: vacant land, one-to-four family residence, farmland, and other (including commercial and multi-family apartments). Willingboro, supra, 62 N.J. at 211-12, 300 A.2d 129.

 The Director added the assessments for all four classes of property, yielding each municipality’s aggregate assessments. Id. at 212, 300 A.2d 129. The Director also added all of the sale prices for all four classes of property to calculate each municipality’s aggregate sales prices. Id.

 The Municipalities use the term "one year weighted ratio” to describe this calculation. The terms "average weighted ratio" and "district weighted ratio" are also used to describe this ratio. See footnote 5.
To calculate each municipality's weighted ratio, the Director first divided the aggregate assessments by the aggregate sales prices. Willingboro, supra, 62 N.J. at 212, 300 A.2d 129. This yielded the class ratio. Id. The Director then divided the aggregate assessments by the class ratio to produce the equalized true value of each property class. 43 New Jersey Practice, supra, at 311. Lastly, the Director added the equalized true values for all four property classes and divided that amount into the aggregate assessments. Bloomfield, supra, 12 N.J.Tax at 547. The resulting percentage was each municipality’s weighted ratio. Id.

 The Municipalities use the term "current true value”. The term "aggregate true value” for the computation year is also used to describe this value. See 43 New Jersey Practice, supra, at 311; See also footnote 5.

 See footnote 5.

 The term "final certified true valuation” is also used to describe this value. See Willingboro, supra, 62 N.J. at 212, 300 A.2d 129.

 "Fifty percent of the equalized true values for the computation year are attributable to the unaveraged true values for that year, 25% of such equalized true values are attributable to the prior year, 12 '/¿% are attributable to the second prior year and so on”. Bloomfield, supra, 12 N.J.Tax at 547.

 The terms "Director’s ratio” and "final average ratio” are also used to describe this value. See Willingboro, supra, 62 N.J. at 212, 300 A.2d 129.

 The Municipalities additionally claim that their equalized true values are equivalent to 100% of market value because their revaluations or reassessments resulted in ratios of assessed to true value of real property nearing 100%.

 in Kearny, the Supreme Court used the terms "aggregate equalized ... true value" and "aggregate true value". Kearny, supra, 35 N.J. at 303, 173 A.2d 8. However, these terms are identical in meaning to equalized true value. Id. (same calculation to reach both amounts).

 “Page 8" is a formula used by County Boards of Taxation in calculating the apportionment of county government costs when a taxing district has undergone a revaluation or reassessment. Little Falls Township v. Passaic Cty. Bd. of Taxation, 139 N.J.Super. 170, 173, 353 A.2d 120 (App.Div.), certif denied, 71 N.J. 345, 364 A.2d 1077 (1976); Atlantic City, supra, 2 N.J.Tax at 42; See also Willingboro, supra, 62 N.J. at 223, 300 A.2d 129 (detailed description of "page 8” calculations).

 Although Bloomfield dealt with the application of the "page 8” formula, the county board in Bloomfield relied on the Director’s Equalization Table for its calculations. See Bloomfield, supra, 12 N.J.Tax at 546. In fact, "the equalized true value determined by the Director for school aid purposes ... with additions for added and omitted assessments" and certain allowable deductions is the denominator in the "page 8" formula. Id. at 548.

 The Municipalities suggest using the equalized true value for 2010 to calculate their average ratios instead of average true value.

 N.J.S.A. 54:3-17 requires that county equalization tables be prepared "[o]n or before March 1 of each year”. Further, N.J.S.A. 54:3-18 provides that the *20 county boards of taxation "shall meet annually for the purpose of reviewing the equalization table prepared pursuant to [N./.S.A.] 54:3-17 ... and the board shall confirm or revise ... but the equalization shall be completed before March 10".

 See Kearny, supra, 35 N.J. at 302, 173 A.2d 8, where the Supreme Court held that in "order to attack the allegedly excessive county tax burden it was necessary [for the taxing district] to challenge the County Equalization Table before the County Tax Board”. Further, even though "the Director’s [equalization] table is ordinarily accepted [and used] by the Board ... such a course would not be warranted in the face of adequate evidence offered by a complaining municipality to demonstrate that the ratio ascribed to it is incorrect or plainly unjust”. Id. at 304, 173 A.2d 8. Accordingly, ”[w]hen the Director’s [equalization] table is adopted as the county table it is not conclusive ... [and] is subject to attack and revision ... before final approval”. Id. at 305, 173 A.2d 8. See also Township of East Windsor v. Division of Tax Appeals, 89 N.J.Super. 282, 290, 214 A.2d 708 (App.Div.1965) ("the county board is not required to make use of the Director’s school aid table and, where it does use it may modify it where its use would create an unjust result ... ”).
Moreover, the Tax Court’s holding in City of Atlantic City v. Director, 24 N.J.Tax 1 (Tax 2008), relied upon by the Municipalities, is distinguishable from the present matters. In Atlantic City, the court held that it lacked jurisdiction over the taxing district’s Chapter 123 ratio challenge. Id. at 5. In Atlantic City the taxing district challenged school aid, its Chapter 123 ratio, and its county equalization ratio. Id. The court found that the taxing district "could not challenge its chapter 123 ratio except by a timely challenge to its school aid ratio ..Id. at 20. Nevertheless, the court did rule on the substance of the taxing district’s "challenge to the 2007 county equalization table", which was filed on April 23, 2007, finding that it was "not untimely” filed. Id. at 22. Accordingly, the jurisdictional defect in Atlantic City, which pertained to the taxing district’s challenge to chapter 123, is not implicated here.