CRABTREE, J.T.C.
Plaintiff instituted this action pursuant to N.J.S.A. 54:51A-4 to review the 1992 county equalization table, computed and ultimately certified by the Essex County Board of Taxation on July 1, 1992, determining a real property ratio of aggregate assessments to aggregate true value of 89.73% for plaintiff for the purpose of allocating the cost of county government among the municipalities of Essex County. Plaintiff contends the ratio should be 99.58% and seeks revision of the table to reflect that percentage.
Plaintiff completed a municipality-wide revaluation for tax year 1992.
The Essex County board, in calculating plaintiffs ratio of aggregate assessments to aggregate true value, utilized the page 8 formula, so named from its appearance on page 8 of a text prepared in 1959 by the Local Property Branch of the New Jersey Division of Taxation entitled “Revalued and Reassessed Districts and the County Equalization Table.” Plaintiff contends that the page 8 formula was never meant to be applied in a declining real estate market and that its application in this case unfairly penalizes plaintiff to the benefit of all municipalities in the county which did not revalue for 1992. Plaintiff argues that its ratio for equalization purposes should be 99.-58%, the percentage of its revaluation assessments to true value as determined by a sampling of sales occurring between October 1991 and March 1992. To be specific, plaintiff continues, the difference between the ratio of 89.73% calculated by the county board and the revaluation ratio of 99.58% amounts to $1,443,941.34 in additional county taxes and an increase in plaintiffs 1992 tax rate from $2.85 per $100 of assessed value to $2.92 per $100 of assessed value.
Each county’s equalization table is prepared on an annual basis. In this regard N.J.S.A. 54:3-17 provides:
Each county tax administrator shall annually ascertain and determine, according to his best knowledge and information, the general ratio or percentage of true value at which the real property of each taxing district is in fact assessed *546 according to the tax lists laid before the board. On or before March 1 of each year, he shall prepare and submit to the county board an equalization table____
N.J.S.A. 54:3-18 directs that each county board of taxation shall (a) review the equalization table prepared pursuant to N.J.S.A. 54:3-17; (b) determine the accuracy of the ratios; and (c) confirm or revise the table accordingly. The Legislature has not specified any particular method to be utilized by a county board in arriving at its final county equalization table; any reasonable and efficient method may be used. Willingboro v. Burlington Cty. Bd. Tax., 62 N.J. 203, 220, 300 A.2d 129 (1973); Cranbury Tp. v. Middlesex Cty. Bd. of Tax., 6 N.J.Tax 501 (Tax 1984), aff'd o.b. per curiam, 7 N.J.Tax 667 (App.Div.1985).
The overriding legislative purpose underlying the preparation of equalization tables is the equal, proportionate sharing of the county tax burden. City of Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. 371, 113 A.2d 753 (1955); Willingboro v. Burlington Cty. Bd. Tax, supra. When any method used imposes on a particular municipality a share dramatically or substantially excessive a court must grant relief. Kearny v. Div. of Tax Appeals, 35 N.J. 299, 310, 173 A.2d 8 (1961). The burden of proof in this regard is on the complaining municipality. Atlantic City v. Atlantic Cty. Bd. of Tax., 2 N.J.Tax 30 (Tax 1980), aff'd o.b. per curiam, 4 N.J.Tax 685 (App.Div.1982).
To put the issue in context I will first explain the equalization method used by the Director, Division of Taxation in determining the distribution of school aid. This is the method adopted by the Essex County Board of Taxation in determining the proportionate share of county taxes to be paid by non-revalued districts.
Using sales recorded in the 12 months ended June 30 of the computation year, a ratio is separately calculated for each of the four property classes: vacant land (class 1), one-to-four family residences (class 2), class 3a (farmland regular)[1] and all *547 others (commercial, industrial, multi-family apartments) (class 4). This ratio (a class ratio) is weighted, i.e., it is determined by adding all the assessments of the properties sold in the class, adding all the sale prices in the class, and dividing the former by the latter.
The next step is to determine the aggregate (or equalized) true value of the properties in each class. This is accomplished by dividing the aggregate assessments in each class by the class ratio. The aggregate true values of all classes are then summed and divided into the aggregate assessments of all classes of properties to produce the weighted, classified ratio for the computation year. Then that ratio is applied to the aggregate assessments to produce the aggregate or equalized true value for the computation year.
Finally, the equalized true value for the computation year is averaged with the prior year’s true value (adjusted for added and omitted assessments), calculated in the same fashion. The aggregate assessments for the computation year are then divided by such average true value to produce the general average ratio. This is the ratio promulgated by the Director for school aid distribution purposes as at October 1 of the computation year for the following school year. The same ratio is used by most county boards, including the Essex County board, in the equalization of true values for county tax apportionment purposes for the tax year next following the computation year.
It is important to note at this point that the equalized true value for any given year is the product of a continuous, overlapping, compounded averaging. Thus, the general ratio applied to the aggregate assessments is weighted not only by property class but also by time. Fifty percent of the equalized true values for the computation year are attributable to the unaveraged true values for that year, 25% of such equalized true values are attributable to the prior year, 12V2% are attributable to the second prior year and so on.[2]
*548 The effect of the formula is to slow the rate of change in the ratios from one year to the next.
The page 8 formula in issue is applied only to taxing districts which have undergone a complete revaluation for the tax year. The formula is expressed in a fraction, the numerator of which is the aggregate revaluation assessments. The denominator is the equalized true value determined by the Director for school aid purposes as at the preceding October 1, with additions for added and omitted assessments and deductions for losses from fire, demolition and transfers to exempt status. The new average ratio for the revaluation year, derived from the fraction, is divided into the aggregate revaluation assessments to produce the revalued district’s equalized true value for the revaluation year.
The justification for the page 8 formula may be briefly explained. In the case of a revalued district a county board cannot adopt the Director’s ratio because the relationship of the old assessments to true value would not necessarily obtain in the revaluation year. Also, the revaluation assessments would have been made at an uncertain percentage of true value. Given the lack of time to conduct a sales ratio study to test the new assessments between January 10 when the new assessments are submitted to the county board, N.J.S.A. 54:4-35, and March 10, when the equalization table is to be promulgated, N.J.S.A. 54:3-18, the county board must find a way to relate the new assessments to true value and to arrive at a new ratio based on the latest ratables base. The page 8 formula was developed for this purpose.
The gravamen of plaintiff’s complaint is that the page 8 formula is unfair and inequitable when applied to a declining market. The revaluation assessments in the numerator are the *549 product of current sales which reflect a decline in values, whereas the denominator of the fraction is an average of values derived from sales occurring in a succession of sales sampling periods beginning several years prior to the sampling period utilized for the revaluation year. The bulk of the sales in the sampling periods occurred in a rising market (as noted above, the average true value for any given year is a compound of averaged true values for several prior years, albeit the weight assigned to the aggregate true values included in the averaging diminishes with the passage of time). Plaintiff contends that its equalization ratio should be 99.58%, which is a one-year, unweighted, unclassified ratio of revaluation assessments to prices of properties sold in the sampling period of October 1991 to March 1992. This ratio is determined by calculating the assessment to price-ratio for each sale, summing the ratios and dividing that sum by the number of sales.
Preliminarily, the court finds that plaintiffs allegations of market decline are supported by its proofs, albeit the magnitude of such decline remains in dispute.
Plaintiff contends that its aggregate revaluation assessments, reflecting, as they do, current market values, should be the sole basis for its equalization table for the revaluation year, and that to modify that table by the introduction of stale data (i.e., sales occurring in several prior periods) which reflect appreciation in market values is unfair to plaintiff.
There are three fundamental flaws in plaintiffs argument. First, the primary purpose of a district-wide revaluation ordered by a county board pursuant to N.J.S.A. 54:3-13 and N.J.S.A. 54:4-47 is to insure intra municipal equality and uniformity of assessments in compliance with Art. VIII § 1, par. 1 of the New Jersey Constitution. Middlesex Cty. Bd. Taxation v. Sayreville Boro., 133 N.J.Super. 41, 335 A.2d 73 (App.Div.1975). The primary purpose of a county equalization table, on the other hand, is to promote inter municipal equality, i.e., a fair proportionate distribution of the county tax burden among the municipalities in the county, with the county board utilizing *550 any method it deems appropriate to accomplish the result. See City of Passaic v. Passaic County Bd. of Taxation, supra, 18 N.J. at 377, 113 A.2d 753. A method of equalization is acceptable so long as it is fair over the long run and substantially free from disparity of method as between taxing districts. Little Falls Tp. v. Passaic Cty. Bd. of Taxation, 139 N.J.Super. 170, 353 A.2d 120 (App.Div.1976). In the quest for a fair apportionment of the county tax burden, exactitude is neither expected nor required; the essential elements are uniformity and equality in the application of the apportionment method selected. Washington Tp. v. Burlington Cty. Bd. of Tax., 7 N.J.Tax 1 (Tax 1984); Sayreville Boro. v. Middlesex Cty. Bd. of Taxation, 133 N.J.Super. 46, 53, 335 A.2d 75 (App.Div.1975).
Second, plaintiff seeks equalized true values calculated by means of a one-year, unweighted, unclassified ratio, leaving all other Essex County municipalities with equalized true values determined under a weighted, multi-year average ratio. The relief plaintiff seeks is detrimental to those other municipalities, as it concentrates the effect of declining market values in one year, while the averaging method employed for nonrevaluing districts spreads the decline over two or more years. (In this connection the court judicially notices that the decline in market values is not confined to Bloomfield; all other taxing districts are affected by the same market conditions.)
Not only is the disparate treatment unfair to the other taxing districts, it is in derogation of the principle that the county board must treat all municipalities uniformly, applying substantially similar data and a common standard. Willingboro v. Burlington Cty. Bd. Tax, supra, 62 N.J. at 219, 300 A.2d 129; Sayreville Boro. v. Middlesex Cty. Bd. Taxation, supra, 133 N.J.Super. at 51, 335 A.2d 75. If the relief plaintiff seeks were to be granted, the principle of uniform treatment and the application of a common standard would require that the equalized true values of all other municipalities be calculated in the same manner, i.e. by using a one-year, unweighted, unclassified *551 ratio.[3] The resulting apportionment might well leave Bloomfield with a greater share of the county tax burden than heretofore calculated by the county board, a pyrrhic victory indeed.
Finally, a graphic illustration offered at trial through the county board’s only witness shows that plaintiff is afforded the same treatment under the page 8 formula as a non-revalued district with the same equalized values for the same two years. Indeed, the Supreme Court observed in Willingboro that the page 8 formula meets the uniformity and common standard requirement. 62 N.J. at 227-28.
Plaintiff’s contention that the page 8 formula was never meant to apply to a declining real estate market is not supported by the Willingboro case nor by any credible evidence. On the contrary, an examination of the averaging methods utilized in calculating equalized true values for both nonrevalued and revalued districts discloses an overall purpose to achieve a slower rate of change in ratios, either up or down.
In view of the foregoing there will be no change in the county equalization table heretofore certified by the Essex County Board of Taxation.
Counsel for defendants will prepare the appropriate form of judgment and submit it pursuant to R. 4:42-l(c) (the five-day rule).

 Class 3b is farmland qualified, i.e., assessed as farmland pursuant to N.J.S.A. 54:4-23.1, et seq. Such property is not included in the calculation of equalization ratios.

 For a good description of the weighted averaging process see Gaynes v. Edison Tp., 179 N.J.Super. 373, 2 N.J.Tax 500, 507-08, 432 A.2d 127 (App.Div.1980) (incorporating findings and conclusions of the Tax Court).

 The Middlesex County Board has applied the unweighted, unclassified ratio to all its municipalities. Its method has received judicial sanction. Perth Amboy v. Middlesex County Bd. of Tax, 91 N.J.Super. 305, 220 A.2d 119 (App.Div.1966), certif. denied, 48 N.J. 112, 223 A.2d 491 (1966).