BIANCO, J.T.C.
The instant matter is a companion case to Township of Jefferson v. Director, Division of Taxation, 26 N.J.Tax 1 (Tax 2011), in which this court, while affirming the 2010 Table of Equalization Valuations[1] (“the Director’s Equalization Table”) promulgated by the Director, Division of Taxation (“the Director”), dismissed the collective plaintiffs’ further challenge to the Morris County Board of Taxation’s 2011 County Equalization Table (“County Equalization Table”) as “premature” since it had not yet been promulgated.[2]
Now, plaintiff, Township of Jefferson (“Jefferson”) alone, timely renews its challenge to the County Equalization Table adopted by defendant, Morris County Board of Taxation (“the Board”), claiming that said County Equalization Table violates the Uniformity Clause of the New Jersey Constitution and is contrary to N.J.S.A. 54:4-2.25 and -2.26.[3] For the reasons herein set forth, the court finds that Jefferson’s arguments are without merit and affirms the County Equalization Table.
The material facts are not in dispute. In accordance with N.J.S.A. 54:3-17 and 3-18, the Board certified as final its County Equalization Table on March 08, 2011. In promulgating its County Equalization Table, the Board adopted the Director’s Equalization Table, which “caleulate[d] the average ratio of assessed value to true value of real property in every taxing district in New *132 Jersey.” Jefferson, supra, 26 N.J.Tax at 11 (emphasis added; footnotes omitted).
The Director, in determining Jefferson’s average ratio utilized a four-step Procedure in use since 1970.[4] In Steps One and Two, the Director calculated Jefferson’s 2010 equalized true value.[5] Then, in “Step Three (averaging step), the Director added [Jefferson’s] equalized true value for 2010 to [its] equalized true value for 2009 and divided the total by two” to calculate Jefferson’s average true value. Id. at 12-13. “Finally, in Step Four, the Director calculated” Jefferson’s “average ratio by dividing [its] aggregate assessments by [its] average true value.” Id. at 13 (emphasis added; footnote omitted).
In the Director’s Equalization Table, subsequently adopted by the Board, Jefferson’s 2010 equalized true value is $2,789,652,763; its average true value is $2,970,371,664; and its average ratio is 94.34%. Jefferson contends that its average ratio of 94.34% results in Jefferson being taxed in excess of 100% of the true market value. According to Jefferson, by adopting its average ratio, which was calculated using the average true value of $2,970,371,664, instead of the equalized true value of $2,789,652,763,[6] the Board overstated Jefferson’s true mai’ket value by $180,707,710. This resulted in an increase to Jefferson’s apportionment of Morris County taxes by $390,000. Such a result, Jefferson argues, violates the Uniformity Clause of the New Jersey Constitution, as well as N.J.S.A. 54:4-2.25 and -2.26.
Jefferson does not challenge the use of averaging in general lie. Step Three); rather it merely argues that the use of averaging in a declining market (like the present) is unconstitutional and statutorily prohibited.
Noting the presumptive correctness of its County Equalization Table, the Board, in opposition, asserts that Jefferson’s challenges *133 have already been raised and adjudicated in Township of Bloomfield v. Essex Cty. Bd. of Taxation, 12 N.J. Tax 543 (Tax 1992) and Township of Willingboro v. Burlington Cty. Bd. of Taxation, 62 N.J. 203, 300 A.2d 129 (1973). Furthermore, the Board contends that averaging (even in a declining market) is beneficial to taxing districts and taxpayers, since it promotes predictability in local budgets and stabilizes property tax bills. See City of Newark v. Essex Cty. Bd. of Taxation, 124 N.J.Super. 76, 81, 304 A.2d 761 (App.Div.), certif. denied, 63 N.J. 566, 310 A.2d 480 (1973).
According to the Board, averaging slows the decline of average ratios in appreciating markets and slows the increase of average ratios in depreciating markets. The Board contends that Jefferson’s challenge to the use of averaging in a declining market (which would result in a higher average ratio for 2011) is motivated by self-interest, and is not in the interest of fairness since, generally, the higher a municipality’s average ratio the lower its share of the county tax burden. See Town of Kearny v. Dir., Division of Taxation, 11 N.J.Tax 497 (Tax 1991), aff'd, 13 N.J.Tax 119 (App.Div.1992).
ANALYSIS
a. Burden of Proof
“It has been recognized, and should be restated, that [ ] equalization ... is, at best [ ] an imperfect and inexact science.” Borough of Sayreville v. Middlesex Cty. Bd. of Taxation, 133 N.J.Super. 46, 53, 335 A.2d 75 (App.Div.1975). “Understandably, exactitude is neither expected nor required and a degree of imperfection is perforce tolerated.” Ibid.; See Willingboro, supra, 62 N.J. at 220, 300 A.2d 129.
County equalization tables are “presumed correct until overcome by sufficient competent evidence, ‘[wjhich must be definite, positive, and certain in quantity and quality.’ ” Sayreville, supra, 133 N.J.Super. at 53, 335 A.2d 75 (emphasis added) (quoting City of Perth Amboy v. Middlesex Cty. Bd. of Taxation, 91 N.J.Super. 305, 309, 220 A.2d 119 (App.Div.), certif. denied, 48 *134 N.J. 112, 223 A.2d 491 (1966)); See City of Atlantic City v. Atlantic Cty. Bd. of Taxation, 2 N.J.Tax 30, 35 (Tax 1980) (“burden of proof on the complaining municipality is a heavy one”), aff'd, 4 N.J.Tax 685 (App.Div.1982), certif. denied, 93 N.J. 250, 460 A.2d 659 (1983).
Furthermore, county equalization tables have been upheld by our courts unless the average ratio is “arbitrary, capricious, or unreasonable____” Washington Twp. v. Warren Cty. Tax Administrator, 19 N.J.Tax 1, 7 (Tax 2000). In order to prevail in a challenge, a municipality must demonstrate that its average ratio is “incorrect or plainly unjust and that there has been imposed on [it] a ‘dramatically or substantially excessive’ share of the county tax burden.” Atlantic City, supra, 2 N.J.Tax at 35 (emphasis added); See Willingboro, supra, 62 N.J. at 220, 300 A.2d 129.
At trial, Jefferson offered the testimony of its Tax Assessor, Shawn G. Hopkins (“Mr. Hopkins”), who was accepted by the court as an expert, and who prepared a report which was admitted in evidence. Mr. Hopkins testified that Jefferson’s average ratio would have been 100.45%[7] had the Board used Jefferson’s equalized true value of $2,789,652,763 rather than its average true value of $2,970,371,664. This, according to Mr. Hopkins, would have lowered Jefferson’s burden of county taxes by $390,000. Mr. Hopkins testified that $390,000 represents 6.01% of Jefferson’s overall county tax obligation and is “dramatically or substantially excessive” since $390,000 is the equivalent of four police officers salaries or the overtime budget for snowplowing services.[8]
On cross-examination, however, Mr. Hopkins admitted that he did not know what impact (positive or negative, if any) there would be on Jefferson’s portion of county taxes if the Board uniformly stopped averaging in all the municipalities in Morris County that *135 were experiencing a declining market.[9] Mr. Hopkins calculated the impact on the other thirty-eight Morris County municipalities if the Board apportioned only Jefferson’s county taxes without the use of averaging. According to Mr. Hopkins, the tax burden of the other thirty-eight would increase in amounts ranging from $163.07 (Netcong Borough) to $82,043.02 (Hanover Township), with the Town of Parsippany-Troy Hills experiencing a 9.48% increase in its share of Morris County taxes.[10]
The court finds that Jefferson failed to proffer competent, definite, and positive evidence that the average ratio promulgated in the County Equalization Table was “arbitrary, capricious, or unreasonable.” See Washington, supra, 19 N.J.Tax at 7. Jefferson failed to offer any calculations, or testimony, regarding what impact there would be to Jefferson if the Board utilized averaging only for those municipalities that were not experiencing declining markets. See Sayreville, supra, 133 N.J.Super. at 53, 335 A.2d 75.
Accordingly, the court does not find that Jefferson’s average ratio, as promulgated by the Board, was “incorrect”, “plainly unjust”, or resulted in a “ ‘dramatically or substantially excessive’ share of the county tax burden”. See Atlantic City, supra, 2 N.J.Tax at 35; See also Willingboro, supra, 62 N.J. at 207, 300 A.2d 129 (emphasis added) (addressing the issue of “an excessive share ... in relation to the shares assigned [to] the other taxing districts of the county”).
The court finds that Jefferson failed to overcome the presumption in favor of the County Equalization Table.* [11]
*136 b. Uniformity Clause of the New Jersey Constitution
“The overriding legislative purpose underlying the preparation of equalization tables is the equal, proportionate sharing of the county tax burden.” Bloomfield, supra, 12 N.J.Tax at 546. County boards of taxation must “secure, to the most feasible limit, a fair distribution of the common tax burden and [ ] minimize as much as possible the unfair or disparate allocation of the joint tax.” Sayreville, supra, 133 N.J.Super. at 53, 335 A.2d 75; See Passaic v. Passaic Cty. Bd. of Taxation, 18 N.J. 371, 381, 113 A.2d 753 (1955).
The Uniformity Clause of the New Jersey Constitution requires that real property:
be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing district shall be assessed according to the same standard of value ...
[N.J. Const. Art. VIII, § 1, P. 1, (emphasis added).]
In Jefferson, the taxing districts argued that “the term ‘standard of value’ as used in the Uniformity Clause, mean[t] ‘market value’ for purposes of equalization. Therefore ... the Director violated the Uniformity Clause when he calculated the average ratios, using an average true value that exceeded equalized true value.” Jefferson, supra, 26 N.J.Tax at 16 (emphasis added).
This court, in reaffirming Bloomfield, rejected that argument. Id. at 17; See Bloomfield, supra, 12 N.J.Tax at 550 (applying averaging to one taxing district but not to another would cause unfair, “disparate treatment ... in derogation of the principle that the county board must treat all municipalities uniformly, applying substantially similar data and a common standard”) (emphasis added).
Specifically, the court found that “applying averaging to all municipalities except those experiencing a market decline would constitute unequal and disparate treatment.” Jefferson, supra, 26 N.J.Tax at 17 (emphasis added). Furthermore, accepting “the *137 [mjunicipalities’ argument would mean that taxing districts with current year equalized true values lower than those of the previous year, would [not, sic.] be subject to averaging while taxing districts with increased equalized tru,e values would [be, sic.]. This is specifically the outcome contemplated and disapproved by the court in Bloomfield.” Id. at 18-19; See Bloomfield, supra, 12 N.J.Tax at 550; See also Willingboro, supra, 62 N.J. at 221, 300 A.2d 129 (the “failure to apply a common standard to each [taxing] district necessarily distortls] the burden-sharing balance of all”) (emphasis added).[12]
Here, Jefferson fails to articulate, any reason why this court should deviate from its holding in Jefferson, supra, 26 N.J.Tax at 19.[13] Moreover, while Bloomfield and Willingboro discussed above, addressed the concepts of uniformity and equal treatment of municipalities by County Boards of Taxation, it is not at all clear whether Jefferson’s argument pursuant to the Uniformity Clause per se, is even appropriate under the present facts. See Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 506-7, 628 A.2d 288 (1993) (finding that “[t]he history of the 1947 [Constitution’s] tax clause” and case law suggest that “the term ‘taxing district’ as used within the uniformity clause, refers to municipalities”; noting that “the purpose of the [Uniformity] clause ‘was to assure that all taxable property within a municipality shall bear the same share of the tax burden of that municipality.’ ”) (citations omitted).
c. N.J.S.A. 54:4-2.25 and -2.26
N.J.S.A. 54:4-2.25 provides that:
*138 real property subject to assessment and taxation for local use shall be assessed according to the same standard of value, which shall be the true value of such real property and the assessment shall be expressed in terms of the taxable value of such property ... [which] shall be established by each county board of taxation ... [Id. (emphasis added).]
Likewise, N.J.S.A. 54:4-2.26 requires that the
level of taxable value of real property established by a county board of taxation shall be expressed as a multiple of 10%, and no level so established shall be ... higher than 100% of the standard of value.

[Id.]

Jefferson contends that “100% of the standard of value” means true market value and is equivalent to Jefferson’s equalized true value. Accordingly, N.J.S.A. 54:4-2.25 and -2.26 prohibit the Board from apportioning Jefferson’s share of Morris County taxes based on the average ratio of 94.34% since this ratio is based on an average true value in excess of Jefferson’s equalized true value.[14]
The court rejects this argument. These statutes were briefly touched upon by the court in Jefferson, where this court found that N.J.S.A. 54:4-2.25 and -2.26 apply to county boards of taxation. Jefferson, supra, 26 N.J.Tax at 14-15. However, by way of clarification, these statutes appear in Subtitle 2 of the New Jersey Statutes entitled “Taxation of Real and Personal Property in General”[15] and not in Subtitle 1 of the New Jersey Statutes, which pertains to the promulgate of county equalization tables[16]. Accordingly, the court concludes that while N.J.S.A. 54:4-2.25 and -2.26 apply to county boards of taxation, they do not apply to the promulgation of county equalization tables.
Furthermore, this court determined in Jefferson that equalized true value is not equal to true market value. See Jefferson, *139 supra, 26 N.J.Tax at 15 (finding that “[i]t is well established that equalized true value is not ‘actually or accurately represent[tative of] true market value’” since “[u]nlike individual real property appeals where the true value for a specific property can be determined through examination, analysis, appraisal and comparison to like-sales, a taxing district’s equalized true value is merely ‘hypothetically the true [ ] value.’ ”) (citations and quotations omitted).
CONCLUSION
For the foregoing reasons, the court finds that Jefferson failed to overcome the presumption in favor of the County Equalization Table and failed to demonstrate that it bore a “dramatically or substantially excessive’ share of the county tax burden.” Atlantic City, supra, 2 N.J.Tax at 35. Likewise, the court rejects Jefferson’s arguments that the County Equalization Table violates the Uniformity Clause of the New Jersey Constitution and N.J.S.A. 54:4-2.25 to -2.26.
Accordingly the County Equalization table is affirmed. The Tax Court Clerk/Administrator shall enter judgment consistent with this opinion.

 The Director’s Equalization Table was promulgated on October 01, 2010 for use in tax year 2011.

 In dismissing the claim as premature, the court in Jefferson noted that “while it is common for County Boards of Taxation to adopt the Director’s Equalization Table in apportioning government county costs, there is no requirement to do so.” Jefferson, supra, 26 N.J.Tax at 19.

 See Jefferson, supra, 26 N.J.Tax 1.

 See id. at 5, 11-13.

 See id.

 Jefferson contends that equalized true value equals true market value.

 100.45% is Jefferson's weighted ratio. See Jefferson, supra, 26 N.J.Tax at 12.

 Mr. Hopkins did not object to the sales study (i.e. Step One) used to calculate Jefferson’s 2010 equalized true value which he acknowledged could be inaccurate by as much as 10%, a percentage larger than the 6.01% reduction Jefferson would experience.

 While^Jefferson failed to define or proffer evidence as to what constitutes a “declining market", no one disputed that the real estate market was in fact declining during the time relevant to this proceeding.

 Mr. Hopkins took no issue with a 9.48% increase in Parsippany-Troy Hill’s county tax burden, which represents a larger percentage of change than the 6.01% reduction Jefferson would experience.

 The Board called Thomas Reilly, Bureau Chief of the Director’s Local Property Tax Division, responsible for publishing the 'New Jersey Real Property *136 Appraisal Manual for Assessors' and the Director's Equalization Table. While informative as to the promulgation of the Director's Equalization table, his testimony in this matter was not, in a technical sense, relevant to the promulgation of the County Equalization Table and was given little weight.

 The errors noted in this quotation are being corrected in the published version of Jefferson now available in the advance sheet and on internet legal research sites. Furthermore, since Jefferson is now before the Appellate Division, this court, by letter of September 1, 2011, advised the higher court, and all counsel of record, of the anticipated corrections.

 Jefferson relies on Abe Schrader Corp. v. Town of Secaucus, 8 N.J.Tax 390, 392 (Tax 1986), in support of its challenge, which the court finds distinguishable since Abe Schrader Corp. involves a real property tax appeal and not, as here, a challenge to equalization.

 "N.J.S.A. 54:4-2.25 and -2.26 specifically identifies these provisions as applying to the ‘county board[s] of taxation'. Neither the Director nor the [Director’s] Equalization Table is mentioned in either statute.” Jefferson, supra, 26 N.J.Tax at 14-15.

 See Title 54, Subtitle 2, Chapter 4, Article 1A.

 See Title 54, Subtitle 1, Chapter 3, Article 3.