48 A.3d 1126

TOWNSHIP OF JEFFERSON, PLAINTIFF–APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANTS–RESPONDENTS, AND DEPARTMENT OF THE TREASURY, AND MORRIS COUNTY BOARD OF TAXATION, DEFENDANTS.

TOWNSHIP OF JEFFERSON, PLAINTIFF–APPELLANT, v. MORRIS COUNTY BOARD OF TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 15, 2012—Decided August 6, 2012.

Before Judges PAYNE, REISNER and HAYDEN.

*Lawrence P. Cohen* argued the cause for appellant (*Courter, Kobert & Cohen,* attorneys; *Mr. Cohen,* of counsel; *Richard W. Wenner,* on the briefs).

*Julian F. Gorelli,* Senior Deputy Attorney General, argued the cause for respondents (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel, *Mr. Gorelli,* on the briefs).

PER CURIAM.

In these tax appeals, which we have consolidated for purposes of this opinion, plaintiff, the Township of Jefferson (Township), challenges the Table of Equalized Valuations promulgated by defendant, the Director, Division of Taxation, for the year 2010 (the Director's Equalization Table), to be used by the Commissioner of Education for the apportionment of school aid. The Township also challenges the Morris County Board of Taxation's 2011 County Equalization Table (the County Equalization Table), which is used in apportioning county government costs. In promulgating its County Equalization Table, Morris County adopted the Director's Equalization Table. For that reason, the Township's arguments apply equally to both documents.

The Township's challenges to the Equalization Tables were rejected by Tax Court Judge Bianco in published opinions. *Twp. of Jefferson v. Dir. Div. of Taxation,* 26 *N.J.Tax* 1 (Tax 2011) (*Jefferson I* ) (considering the Director's Equalization Table) and

*Twp. of Jefferson v. Morris Cnty. Bd. of Taxation*, 26 *N.J.Tax* 129 (Tax 2011) (*Jefferson II* ) (considering the County's Equalization Table). The Township makes the same arguments on appeal.

As Judge Bianco observed in the first of his opinions:

Justice Brennan observed that some form of "equalization . . . has been a feature of our tax laws . . . [since] June 10, 1799." *City of Passaic* [*v. Passaic Cnty. Bd. of Taxation* ], 18 *N.J.* [371], 382 [113 *A.*2d 753 (1955) ] (citations omitted). "Equalization is the process of insuring that each property in every taxing district carries its fair, legal share of the burden of taxation." Division of Taxation, Department of the Treasury, State of New Jersey, *Handbook for New Jersey Assessors*, X–1 (1989). Our Supreme Court has held that:

[t]he need for an equalization table and for a determination of the ratio of assessment to true value for school aid and county tax distribution stems from the failure of local assessors to assess property in their municipalities at true value or at a uniform percentage thereof uniformly applied by all municipalities.

[*Town of Kearny v. Division of Tax Appeals*, 35 *N.J.* 299, 303, 173 *A.*2d 8 (1961).]

[*Jefferson I, supra*, 26 *N.J.Tax* at 10.]

*N.J.S.A.* 54:1–35.1 requires that, "[o]n or before October 1 in each year the Director of the Division of Taxation . . . shall promulgate a table of equalized valuations to be used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954." The equalization method used by the Director in determining the distribution of school aid and adopted by Morris County to ensure the equal, proportionate sharing of the county tax burden has been described by Judge Crabtree in his opinion in *Bloomfield Township v. Essex County Tax Administrator*, 12 *N.J.Tax* 543 (Tax 1992) as follows:

Using sales recorded in the 12 months ended June 30 of the computation year, a ratio is separately calculated for each of the four property classes: vacant land (class 1), one-to-four family residences (class 2), class 3a (farmland regular) and all others (commercial, industrial, multi-family apartments) (class 4). This ratio (a class ratio) is weighted, *i.e.*, it is determined by adding all the assessments of the properties sold in the class, adding all the sale prices in the class, and dividing the former by the latter.

The next step is to determine the aggregate (or equalized) true value of the properties in each class. This is accomplished by dividing the aggregate assessments in each class by the class ratio. The aggregate true values of all classes are then summed and divided into the aggregate assessments of all classes of properties to produce the weighted, classified ratio for the computation year. Then that

ratio is applied to the aggregate assessments to produce the aggregate or equalized true value for the computation year.

Finally, the equalized true value for the computation year is averaged with the prior year's true value (adjusted for added and omitted assessments), calculated in the same fashion. The aggregate assessments for the computation year are then divided by such average true value to produce the general average ratio.

[*Id.* at 546–47 (footnote omitted).]

*See also Jefferson I, supra,* 26 *N.J.Tax* at 11–13.

The Township's challenge focuses on the averaging step in the equalization process. It argues that, as the result of using such averaging in a declining real estate market, the Township's school aid is lessened and county taxes are unfairly increased. In circumstances in which, as the result of averaging, the average true value exceeds the equalized true value, the Township contends that the Director and the County are obligated to use the equalized true value in calculating applicable school aid and county taxes, respectively.

In the initial proceedings before Judge Bianco, the Township, together with other municipalities, challenged both the Director's Table of Equalized Valuations and the apportionment of county taxes by the Morris County Board of Taxation. The judge declined to address issues relating to the County because, although it was common for a county to adopt the Director's Equalization Table, Morris County had not yet done so. As a result, the judge found the parties' challenge to be premature. *Jefferson I, supra,* 26 *N.J.Tax* at 19.

Addressing challenges to the Director's Table of Equalized Valuations, the judge found that the Director's use of average true value in excess of equalized true value for the 2010 tax year did not violate either statutory law as set forth in *N.J.S.A.* 54:4–2.25 and –2.26 and in *N.J.S.A.* 54:1–35.1 to –35.6, or the New Jersey Constitution's Uniformity Clause. The judge determined that *N.J.S.A.* 54:4–2.25 and –2.26 did not apply to the Director's promulgation of the Equalization Table. *Id.* at 14–15. Additionally, the judge rejected the municipalities' argument that equalized true value is statutorily defined in *N.J.S.A.* 54:1–35.1 to –35.6 as

100% of market value, holding, on the basis of prior precedent, that equalized true value was recognized instead to be "a practical approximation" and that the "average ratio of assessed value to true value 'can never be known with certainty.' " *Id.* at 15 (citations omitted). Additionally, the judge found that the language of the statutes cited by the parties did not support their position. *Id.* at 16.

Addressing the argument that use of the Director's Equalization Table in the circumstances presented violated the State Constitution's Uniformity Clause, the judge determined that he was "satisfied that the Municipalities' argument was previously considered and rejected" in *Bloomfield, supra,* 12 *N.J.Tax* at 551, and that the factual distinctions between it and the present matter, raised by the parties, were inconsequential. *Jefferson I, supra,* 26 *N.J.Tax* at 17. The judge observed:

> Accepting the Municipalities' argument would mean that taxing districts with current year *equalized true values* lower than those of the previous year, would be subject to averaging while taxing districts with increased *equalized true values* would not. This is specifically the outcome contemplated and disapproved by the court in *Bloomfield. See Bloomfield, supra,* 12 *N.J.Tax* at 550.
>
> [*Jefferson I, supra,* 26 *N.J.Tax* at 18–19.]

As a consequence, the parties' challenge to use of the Director's Equalization Table in municipalities in which there was a declining real estate market was rejected.

Following the adoption of the Director's Equalization Table by the Morris County Board of Taxation, the Township of Jefferson, alone, renewed the challenge to averaging in a declining market that it and other municipalities had previously asserted. Again, the Township argued that use of the Equalization Table in a such a market was unconstitutional and statutorily prohibited. The Township's arguments, which largely repeated those that Judge Bianco had previously addressed, were rejected by him in *Jefferson II, supra,* 26 *N.J.Tax* 129.

In that opinion, the judge noted evidence presented by the Township that the County's Equalization Table listed the Township's 2010 equalized true value as $2,789,652,763 and its average

true value as $2,970,371,664, with an average ratio of 94.34%. Jefferson contended that utilization of that ratio resulted in the Township being taxed in excess of 100% of true market value. The Township contended the use of average true value resulted in an overstatement of true market value by $180,707,710 and an increase in the Township's apportionment of Morris County taxes by $390,000. *Id.* at 132.

In ruling against the Township, Judge Bianco noted:

county equalization tables have been upheld by our courts unless the *average ratio* is "arbitrary, capricious, or unreasonable. ..." *Washington Twp. v. Warren Cnty. Tax Administrator,* 19 *N.J.Tax* 1, 7 (Tax 2000). In order to prevail in a challenge, a municipality must demonstrate that its *average ratio* is "incorrect or plainly unjust and that there has been imposed on [it] a *'dramatically or substantially excessive' share* of the county tax burden." [*City of*] *Atlantic City* [*v. Atlantic Cnty. Bd. of Taxation* ], 2 *N.J.Tax* [30], 35 [ (1980) ] (emphasis added); *See* [*Twp. of*] *Willingboro* [*v. Burlington Cnty. Bd. of Taxation* ], 62 *N.J.* [203], 220 [300 *A*.2d 129 (1973) ].

[*Jefferson II, supra,* 26 *N.J.Tax* at 134.]

Addressing the Township's proofs, the judge noted that, although the Township offered evidence of the impact of the use of average true value on it, its expert did not know what impact there would be on the Township's county taxes if the Board uniformly stopped averaging in all Morris County municipalities in which real estate markets were declining. *Id.* at 134–35. Moreover, the expert was compelled to acknowledge the adverse impact that a decision by the Board to stop averaging only in Jefferson Township would have on other Morris County municipalities. *Id.* at 135. As a result, the judge found that the Township had "failed to proffer competent, definite, and positive evidence that the *average ratio* promulgated in the County Equalization Table was 'arbitrary, capricious, or unreasonable.' " *Ibid.* (citation omitted).

The judge adhered to his prior decision with respect to the constitutionality of the use of averaging in the Equalization Table. *Id.* at 136–37. And he again rejected the argument that *N.J.S.A.* 54:4–2.25 and –2.26 prohibited the Board from apportioning the

Township's share of Morris County taxes based on the average ratio of 94.34%, since the ratio was based on an average true value in excess of the Township's equalized true value. In that regard, the judge clarified his prior opinion, in which he had held that the statutes did not apply to the Director, but only to county boards of taxation. *Jefferson I, supra,* 26 *N.J.Tax* at 14–15. He noted that the statutes appeared in Subtitle 2 of the statutes, entitled "Taxation of Real and Personal Property in General" and not in Subtitle 1, which was applicable to county equalization tables. *Jefferson II, supra,* 26 *N.J.Tax* at 138. Further, the judge reinforced his view that equalized true value was not the equivalent of true market value. *Id.* at 138–39.

Accordingly, the judge found that the Township had failed factually to overcome the presumption in favor of the County Equalization Table, and he rejected the Township's statutory and constitutional arguments.

As previously noted, those arguments have been repeated on appeal from the orders resulting from Judge Bianco's two opinions. We reject the Township's position, being satisfied that Judge Bianco's detailed and careful analysis of the facts and the law was proper.

Affirmed.