NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
---------------------------------------------------------x
CITY OF NEW BRUNSWICK,                 :
                                       :    TAX COURT OF NEW JERSEY
                   Plaintiff,          :    DOCKET NO: 010387-2025
                                       :
        v.                             :
                                       :
DIRECTOR, DIVISION OF TAXATION,        :
                                       :         OPINION
                   Defendant.          :
---------------------------------------------------------x
```

Decided  January 27, 2026.

Emil H. Philibosian for City of New Brunswick (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys).

James J. Robinson, Jr. for Director (Jennifer Davenport, Acting Attorney General of New Jersey).

CIMINO, J.T.C.

Plaintiff, City of New Brunswick, challenges the defendant Director of Division of Taxation's calculation of the 2025 table of equalized valuations.  The City alleges a particular sale improperly skews the equalized valuation and the average ratio, resulting in unfairness to the City and its taxpayers.  The court rejects the City's challenge to the table.

The table of equalized valuations is a legislative construct created to implement the State School Aid Act of 1954.  N.J.S.A. 54:1-35.1.  The table contains the results of calculations related to the total property value in each municipality.

Property values serve as a proxy for the wealth of a community and form a basis for the equitable distribution of State public education aid.

The assessed value of property is not uniform amongst municipalities. For purposes of comparison, the table derives each municipality's aggregate true property value from assessed value. A process referred to as equalization. Over time, the table's use has expanded to include determination of tax appeals, equalizing the county tax burden amongst municipalities, and determining the funding for other State programs. Town of Kearny v. Dir., Div. of Tax'n, 11 N.J. Tax 232, 238-39 (Tax 1990), aff'd, 13 N.J. Tax 119 (App. Div. 1992).

The Legislature requires the table to include each municipality's aggregate true value of real property, average ratio and equalized valuation. N.J.S.A. 54:1-35.2. The Legislature left it to the Director to devise the exact formula for calculating the aggregate true value and the average ratio. N.J.S.A. 54:1-35.3.

The Director's current formulation for completing the table of equalized valuations dates to 1970. Township of Jefferson v. Dir., Div. of Tax'n, 26 N.J. Tax 1, 5 (Tax 2011), aff'd, 427 N.J. Super. 347 (App. Div. 2012) (citing Memorandum from the Dep't of the Treas., Div. of Tax'n, Local Prop. Tax Bureau, to The Sec'y of Each Cnty. Bd. of Tax'n, All Mun. Assessors, and All Mun. Clerks (July 30, 1970)). See also Dep't of the Treas., Div. of Tax'n, Prop. Admin. – Loc. Prop. Tax., Handbook

for County Boards of Taxation app. pp. 49-51 (July 2005) (reprint of text of memorandum).

At the center of this formulation is a weighted, classified and multi-year-averaged sales study. Jefferson House Inv. Co. v. Borough of Chatham, 4. N.J. Tax 669, 683 (Tax 1982). The study gives more weight to higher valued properties, classifies property values into four classes (i.e., vacant land, residential, farm and commercial) for comparison, and averages the determinations of multiple years. The sales study excludes nonusable properties such as those not at arm's length. 1530 Owners Corp. v. Borough of Fort Lee, 135 N.J. 394, 398 (1994). Through a process which compares assessed value to sales price by class, the Director derives the total true value of all properties in the municipality. Averaging the current year's true value with the prior year's aggregate true value leads to the current year's aggregate true value. The average ratio is the ratio of assessed value to aggregate true value. The ratio assists in determining tax appeals. N.J.S.A. 54:1-35a(a), 3-22, 51A-6.

Finally, the Legislature dictates that equalized valuation is the aggregate true value plus taxable personal property and class II railroad property values. N.J.S.A. 54:1-35.2. This calculation is a historical holdover and has little impact. At the time of enactment of the State School Aid Act in 1954, the statewide municipal tax base consisted of 13% personal property and 3% Class II railroad property. Commission on State Tax Policy, Seventh Report of the Commission on State Tax Policy – public

3

school financing in New Jersey 83 (1954).  In some municipalities, railroad property taxes consisted of over 15% of the tax base.  Commission on State Tax Policy, Third Report of the Commission on State Tax Policy – the taxation of New Jersey Railroads 28-29 (1948).  Nowadays, the Legislature limits the personal property tax to certain telephone and petroleum refining equipment and municipalities no longer receive class II railroad taxes.  N.J.S.A. 54:4-1 (personal property).  N.J.S.A. 54:29A-23 (railroad tax to State).  Yet, equalized valuation is still a yardstick for distributing school equalization aid.  N.J.S.A. 18A:7F-52, -53.

"Equalization is the process of insuring that each property in every taxing district carries its fair, legal share of the burden of taxation."  Jefferson, 427 N.J. Super. at 349.  "The Director's task in promulgating the Equalization Table is 'one of great administrative complexity, involving, each year, literally scores of thousands of subordinate determinations.'"  Jefferson, 26 N.J. Tax at 7 (quoting City of Bayonne v. Div. of Tax Appeals, 49 N.J. Super. 230, 239 (App. Div.1958)).

The City's complaint challenges the inclusion of the sale of Lot 9.01 of Block 598 of the tax maps, commonly known as 594 Jersey Avenue.  The assessed value of the property is $6,800,000.  As indicated on a deed recorded February 6, 2025, the property sold for $11,950,000.  Based upon the foregoing, the assessment to sales ratio is 56.90%.  The assessor classified the property as class 4B, industrial.  However, non-industrial commercial uses including a daycare are operating on the

4

property. The assessor credibly testified there were not any anomalies with the assessment of the property. Still, the assessor alleged that it was his opinion that including the sale causes an anomaly because it skews the aggregate true value too much.

The 594 Jersey Avenue property was the only usable class 4B property sold. However, twelve class 4 properties, including 594 Jersey Avenue, sold. In addition to class 4B, class 4 includes class 4A, commercial, and class 4C, apartments. See N.J.A.C. 18:12-2.2 (listing classes). The assessment to sales ratios of the other class 4 property sales are both below and above the 594 Jersey Avenue ratio.

The Director's formulation outlined above considers all class 4 properties together in the same class. The class ratio for all class 4 property sales, including 594 Jersey Avenue, is 63.53%. Removing 594 Jersey Avenue increases the class 4 ratio to 71.07%. This decreases the total true value for all property classes by 5.85% (1-5,486,479,425/5,827,676,201).[1] Since the 2025 true value is part of an average with the 2024 aggregate true value, the decrease of the 2025 equalized valuation is only 3.26% (1-$5,047,560,746/$5,217,698,340).[2]

---

[1] Value is inverse to the sales ratio. As one increases, the other decreases, and vice-versa.

[2] Parenthetically, removing the 594 Jersey Avenue property increases the average ratio from 69.61% to 71.96%. A decrease in aggregate true value increases the average ratio.

The City argues that this shift in the ratio is sufficient for the Director to discard 594 Jersey Avenue as a usable sale. But, "[c]hallenges to the . . . school aid . . . tables 'can only be successful if plaintiff can demonstrate that the Director's action could not reasonably be justified.'" City of Atl. City v. Dir., Div. of Tax'n, 24 N.J. Tax 1, 11–12 (Tax 2008), aff'd sub nom., City of Atl. City v. Atl. Cnty. Bd. of Tax'n, 25 N.J. Tax 280 (App. Div. 2009) (citing Borough of Fort Lee v. Dir., Div. of Tax'n, 12 N.J. Tax 299, 311-12 (Tax 1992), aff'd, 13 N.J. Tax 323 (App. Div. 1993)). See also N.J.S.A. 54:51A-4(c) (establishing "could not reasonably be justified" standard). The "could not reasonably be justified" standard is more stringent than an arbitrary, capricious or unreasonableness showing. Atl. City, 24 N.J. Tax at 12.

In the normal course, "[t]he Director screens and investigates the various sales of real property to determine which of those sales to use in the study. The standards applied in determining usability are reflected in N.J.A.C. 18:12–1.1." 1530 Owners, 135 N.J. at 398. N.J.A.C. 18:12-1.1 sets forth thirty-six nonusable categories. The City points to Nonusable Category 36 (NU36), N.J.A.C. 18:12-1.1(a)(36), and Borough of Englewood Cliffs v. Dir., Div. of Tax'n, 18 N.J. Tax 662 (App. Div. 2000), the decision underpinning NU36. NU36 was promulgated in May of 2025 in response to the Appellate Division's direction in Englewood Cliffs which "conclude[d] that the Director properly excluded the [property] sale in calculating [the municipality's] assessment ratio, but that the Director should adopt a regulation

6

that deals specifically with the exclusion of sales transactions from the assessment ratio study when an assessment is not representative of a municipality's assessing practices." 18 N.J. Tax at 668.  See also 57 N.J.R. 1042(b) (May 19, 2025) (adopting NU36).

NU36 captures two different instances where the assessment is not representative.  The first instance is where "[t]he assessment is not reflective of the municipality's assessment practice."  N.J.A.C. 18:12-1.1(a)(36)(i).  Based upon the undisputed testimony of both the assessor and the Director's representative, that is not the case here.  The second category is "[t]he individual sale to assessment ratio is excessively high or low, and its individual sale to assessment ratio is so disproportionate to the ratios of other usable sales that its inclusion in the sales-ratio

study would substantially impact the overall municipal ratio." [3,4,5] N.J.A.C. 18:12-1.1(a)(36)(ii). The Director's technical guidance for the regulation provides:

> For this category to be applicable, the change in total equalized value for the municipality must be substantial. As a general rule of thumb, substantial is at least 10%, positive or negative. The change would be shown when the ratio is calculated with the sale included and then excluded, or vice versa.
>
> [Dep't of the Treas., Div. of Tax'n, Prop. Admin. – Loc. Prop. Tax, <u>Guidelines for use of 36 Nonusable Categories used in development of the Director's Table of Equalized Valuations</u> 60 (May 2025).]

---

[3] The Director published updated guidelines in May 2025 for implementing NU36 which varies from the regulations.

Guidelines as promulgated May 2025:

36. Sales of property for which:
    i. the assessment is not reflective of the municipality's assessment practice; or
    ii. the individual sale to assessment ratio is excessively high or low;
    and its individual sale to assessment ratio is so disproportionate to the ratios of other usable sales that its inclusion in the sales-ratio study would distort the overall municipal ratio.

Regulations as adopted May 2025:

36. Sales of property for which:
    i. The assessment is not reflective of the municipality's assessment practice; or
    ii. The individual sale to assessment ratio is excessively high or low, and its individual sale to assessment ratio is so disproportionate to the ratios of other usable sales that its inclusion in the sales-ratio study would substantially impact the overall municipal ratio.

[4] The regulations state "impact" the overall municipal ratio. The guidelines use "distort."

[5] The regulation mentions "sale to assessment ratio." However, the class ratios and the average ratio are assessment to sale (or value) ratios, the inverse of a "sale to assessment ratio."

The equalization valuation shifted 3.26%. This is well short of the "rule of thumb" which the Director utilizes to evaluate these claims. Despite the failure to vault the "rule of thumb," the City argues relief is generally available under Englewood Cliffs.

"New Jersey's courts have recognized the 'breadth of the discretion reposed in the Director in formulating details of methodology.'" Jefferson, 26 N.J. Tax at 7 (quoting Kearny, 11 N.J. Tax at 237). "[T]he Director is given great latitude in the data gathering and calculations which underlie the construction of the school aid table." Fort Lee, 12 N.J. Tax at 301.

"A taxing district cannot successfully challenge the Equalization Table 'merely because a different method in any part of the complex process could be equally reasonably defended.'" Jefferson, 26 N.J. Tax at 7 (quoting Bayonne, 49 N.J. Super. at 239). "Accordingly, the 'ultimate objective' of the Equalization Table is to promulgate 'fairly accurate approximations.'" Jefferson, 26 N.J. Tax at 15 (quoting Bayonne, 49 N.J. Super. at 239). "Unlike individual real property appeals where the true value for a specific property can be determined through examination, analysis, appraisal and comparison to like-sales, a taxing district's equalized true value is merely 'hypothetically the true [ ] value.'" Jefferson, 26 N.J. Tax at 15-16 (quoting Kingsley v. Div. of Tax Appeals, 40 N.J. 338, 341(1963)).

The court does not have to decide whether the 10% threshold is appropriate. The court only needs to decide whether the Director's decision to retain the 594

Jersey Avenue sale in light of the 3.26% shift in equalization valuation "could not reasonably be justified." The City has not set forth a cogent argument for deeming the Director's decision "not reasonably . . . justified." As to the 10% "rule of thumb," the court will await the circumstance where the issue squarely presents itself.[6] In any event, the City does not satisfy its heavy burden of proof.

A separate and independent basis exists for denying the City relief. "[I]n prior school aid challenges, the taxing district had to additionally demonstrate that if it prevailed, its share of distributable school aid will increase significantly." Jefferson, 26 N.J. Tax at 7 "[I]f a successful challenge to the school aid table will result in only minor or insignificant changes in school aid, then the Director's actions will not be upset . . . ." Fort Lee, 12 N.J. Tax at 311. Traditionally, reasonable justification for

---

[6] The Legislature set a plus or minus 15% percent corridor guiding adjustments of assessments. N.J.S.A. 54:1-35a(b). The Director also uses a fifteen percent coefficient of deviation to evaluate whether municipalities need to conduct a revaluation or reassessment. N.J.A.C. 18:12A-1.14(b)(i) to (iv).

Since the current year true value is part of an average with the prior year aggregate true value, a shift in the current year true value somewhat greater than 10% is usually necessary to overcome the Director's "rule of thumb" threshold. By way of example here, a 5.85% shift in current true value only results in a 3.26% shift in current year equalization valuation. Holding the percentage shift in the current year true value steady, as the prior year's aggregate true value increases, the percentage change in the current year's equalization valuation decreases. The appropriateness of either the using a 10% threshold for the "rule of thumb" or mathematically tying the "rule of thumb" test to the prior year's aggregate true value are questions not before the court. There is not any showing the shift here whether evaluated from the standpoint of equalized valuation or true value is sufficient to deem the sale nonusable.

the table of equalized valuations exists unless it leads to some not insignificant misallocation of school aid.  Fort Lee, 12 N.J. Tax at 313.

School equalization aid is based upon the property wealth and income wealth of the municipality.  Each has an equal contribution to the aid calculation with adjustments for other factors.  N.J.S.A. 18A:7F-52, -53.  Generally, the lower the wealth, the greater potential for aid.  Thus, a lower equalization valuation can lead to an increase in equalization aid.  The assessor testified that including the 594 Jersey Avenue sale would only impact school aid "to some small degree."  Certainly, this falls short of the requirement that the share of school aid will change significantly.[7]

Only about half of the municipalities receive school aid tied to equalized valuation.  Dep't of Educ., Off. of Sch. Fin., Fiscal Year 2026 K-12 State School Aid, District Details (2025).  Nevertheless, the equalized valuation and assessment

_____

[7]  In the fiscal year 2026 budget, the Legislature made a one-time change to the funding formula.  The property wealth component utilizes three years of equalized valuations, and the income wealth component uses three years of local income data. L. 2025, c. 74, p. 93.  Seemingly, this reduces the impact of any change in the ratio, at least in the first year.

However, "the equalized true value for any given year is the product of a continuous, overlapping, compounded averaging. Thus, the general ratio applied to the aggregate assessments is weighted not only by property class but also by time. Fifty percent of the equalized true values for the computation year are attributable to the unaveraged true values for that year, 25% of such equalized true values are attributable to the prior year, 12 ½% are attributable to the second prior year and so on."  Township of Bloomfield v. Essex Cnty. Tax Adm'r, 12 N.J. Tax 543, 547 (Tax 1992).  More of a three-year average of equalized valuations is attributable to each of the earlier two years.

to sales ratio have impacted several other statutory and non-statutory calculations. See generally Kearny, 11 N.J. Tax at 238-39 (as of 1990, fourteen different areas of impact).

When queried as to any impacts besides school aid, the assessor raised the impact of the ratio on tax appeals. "As a practical, mechanical, and legal matter, a higher chapter 123 ratio will reduce a municipality's exposure to reductions in property tax assessments." Fort Lee, 12 N.J. Tax at 306. The assessor also mentioned a potential impact upon county equalization since the county tax board follows the sales ratio. But, the assessor did not quantify any financial impact for either concern.

The City has not established financial impact to the City, its schools or its citizens. Thus, the court does not have to decide whether financial impacts beyond school aid suffice. The court leaves the question to a day when it squarely presents itself.

The City has not shown how the inclusion of the 594 Jersey Avenue property sale is not reasonably justified. Moreover, the City has not demonstrated any significant harm to the public interest or fisc by including the 594 Jersey Avenue property. The court dismisses the complaint.